## Commonwealth *v.* Keegan, Appellant (No. 1).

*Criminal law—Legality of arrest—Motion to quash after bail entered.*

A defendant in a criminal case may raise any question touching the legality of his arrest (such as an arrest without a proper warrant), upon a proceeding to be discharged from custody, but if he has given bail to answer, he cannot after indictment found, raise such a question on motion to quash.

*Criminal law—Assault and battery—Settlement—Two different proceedings.*

An indictment for assault and battery will not be quashed in a criminal case on the ground of a full release of civil and criminal liability of the defendant given by the prosecutor in another criminal case in which the position of the parties were reversed, where it appears that the offense charged in the second proceeding was not a part of the transaction involved in the first proceeding.

*Criminal law—Arrest as affecting credibility.*

The mere arrest of a person does not affect his credibility.

The conviction of any crime does not affect a witness's credibility; the crime must be such a one as affects his credibility.

*Appeals—Assignments of error—Remarks of counsel.*

Assignments of error based on alleged improper remarks of counsel will not be considered, where such remarks are not set forth in the record.

*Evidence—Cross-examination—Discretion of trial judge.*

The latitude allowed in cross-examination is largely in the discretion of the trial judge.

*Criminal law—Charge—Failure to ask for further instructions.*

Where a charge is correct, but not as full as it might have been, it is the duty of counsel to ask the trial judge for further instructions. Failing to do so he cannot afterwards complain.

*Criminal law—Charge—Motion.*

A trial judge in a criminal case cannot be convicted of error because he says to the jury "where a motive is shown it is more likely that the defendant committed the crime than a man who had no motive."

Argued Dec. 11, 1917. Appeal, No. 257, Oct. T., 1917, by defendants, from judgment of Q. S. Philadelphia Co., Jan. Sessions, 1917, No. 719, on verdict of guilty in case of Commonwealth v. Edward Keegan et al. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Indictment for assault and battery and aggravated assault and battery. Before CARR, J.

Verdict of guilty upon which judgment of sentence was passed.

*Errors assigned* were (1-36) various rulings and instructions sufficiently appearing in the opinion of the Superior Court.

*William A. Gray,* for appellant.—Where a nolle prosequi is entered by the district attorney with leave of the court, after a settlement of the parties it will be a

438 COMMONWEALTH *v.* KEEGAN, Appellant (No. 1).

termination of the prosecution and cannot be reopened: Commonwealth v. Kohl, 17 Lanc. Law Review 159; Steinbaker v. Wilson, 1 Campbell 176; Riddle v. Hall, 99 Pa. 116; Rothermel v. Hughes, 134 Pa. 510.

It is settled law that the credibility of a witness is a question for the jury and that a witness may be asked whether he has ever been arrested and convicted of a crime: Commonwealth v. Racco, 225 Pa. 113; Commonwealth v. Payne, 242 Pa. 395.

*James Gay Gordon, Jr.,* Assistant District Attorney, with him *Samuel P. Rotan,* District Attorney, for appellees.

OPINION BY TREXLER, J., November 30, 1918:

There are thirty-six assignments of error. In considering them we will group them in the same manner as they appear in appellants' argument.

The first relates to the refusal of the court to quash the indictment. The learned president judge of the lower court stated, "There is nothing in the case to show that a warrant supported upon oath or affirmation subscribed by the affiant" as provided by Sec. 8, Article 1, of the Constitution of Pennsylvania had been issued before the defendants were bound over. He concluded, however, that it was too late after indictment was found for the court to entertain a motion to quash for the reason there having been ample time for defendants to have instituted proceedings to be discharged from custody on the ground of their illegal commitments. This court in Com. v. Dingman, 26 Pa. Superior Ct. 615, following Com. v. Brennan, 193 Pa. 567, stated that a defendant in a criminal case may "raise any questions touching the legality of his arrest upon a proceeding to be discharged from custody, but if he has given bail to answer the charge, he cannot after indictment found raise such questions by motion to quash." See Com. v. Hans, 68 Pa. Superior Ct. 275; Com. v. Mallini, 214 Pa. 50; Com. v.

Taylor, 65 Pa. Superior Ct. 113; Com. v. Haines, 57 Pa. Superior Ct. 616.; Com. v. Williams, 54 Pa. Superior Ct. 545; York City v. Hatterer, 48 Pa. Superior Ct. 216.

Another reason urged on the motion to quash was that the present case had been settled by a release given in a former case, in which the relative positions of the parties to the action were reversed, the defendants in this case being the prosecutors in the former case. The release reads as follows: "In view of the submission of the within bill of indictment, we agree to waive and release all rights, civil or criminal, which we now have or may have against the within prosecutor and the witnesses herein named, arising out of any matter or thing herein referred to." There are a number of cases presented in the argument of the counsel relative to the legal effect of the release, but it is not necessary to discuss them. We agree with the lower court that the release in question is limited to rights arising out of any matter or thing referred to in the indictment. The reference was to the offense charged which occurred in a Race street restaurant, and the assault in the station house, the subject of the present inquiry, was not part of the same transaction.

The defendants endeavored to cross-examine certain witnesses of the Commonwealth as to their previous arrest for crime. These were properly excluded, as strictly speaking, the questions were not properly framed. The mere arrest of a person does not affect his credibility. One witness was asked if he was arrested and had been in the Eastern Penitentiary. He answered, "I was." Objection to the question was sustained; the answer was not stricken out. The question did not ask the particular crime of which he was convicted. We do not regard the cases as holding that a conviction of any crime tends to discredit a witness. The crime should be such as affects the witness's credibility. Considering all these matters, we do not think the court committed error in excluding this. It is largely a matter under the

discretion of the trial judge and unless substantial injury is a result, the appellate court will not reverse: Com. v. Racco, 225 Pa. 113; Com. v. Varano, 258 Pa. 442.

The animated colloquy between contending counsel out of which grew the basis for the seventh assignment presents nothing on which it would be profitable to comment, nor was any error committed by the court.

One of the assignments complaining of a remark of the district attorney is not set forth in the record in the exact words used nor does it appear that the court was requested to have them put upon record: 29th assignment.

The reference made by the district attorney to "that notorious 6th district station house that has so long escaped the light of publicity" we do not think requires a reversal. It was alleged that these words were provoked by a somewhat similar declaration coming from the defendants' attorney. As this does not appear on the record it will not help us. The effect on the jury would not be such as to influence it in the consideration of the facts in the controversy which were within narrow limits and were presented fairly in the charge.

It is urged that there was not enough evidence in the case to convict Weaver. We think there was. The circumstances testified to by the Commonwealth's witnesses properly led the jury to believe that the defendants determined to inflict injury on certain prisoners in their charge. It was testified that Weaver expressed a desire to get one of the prisoners (applying an opprobrious epithet). The jury could find that he aided, abetted and encouraged his fellow officers in their design to get even with the prisoners for an assault made on one of the officers.

Some of the questions of the trial judge assumed there had been a beating. This of course would not be fair to the defendants if it implied that the fact of the beating should be regarded by the jury as established. It is very evident this was not intended, nor could it have

had this effect. The court squarely submitted the question to the jury. From the testimony in the case there seems to have been very little doubt that there had been a beating, but the question was left to the jury.

There are objections urged to certain questions of the defendants in cross-examination. The latitude allowed in cross-examination is largely in the discretion of the court: Com. v. Delfino, 259 Pa. 272. We do not think the trial judge in this instance exceeded the limits. The narrative of the Commonwealth's witnesses and the defendants' were at variance. The defendants' claimed entire absence of knowledge as to certain occurrences which the Commonwealth's witnesses said had transpired. Under these circumstances it was quite natural that the defendants' should be asked as to whether they had not heard of the events, as the news had been circulated to some extent through police circles. Though the questions may not have been strictly pertinent, they might well serve to lead up to something that might be. In any event, they did the defendants no harm.

The instructions of the court as to character were objected to by defendants' counsel, but there was no request for further instructions. The instructions as given were correct, but not as full as they might have been. Had the defendants' counsel desired ampler discussion of the matter he should have so requested.

In regard to the question of reasonable doubt we think the court sufficiently instructed the jury: Com. v. Berney, 66 Pa. Superior Ct. 434; Com. v. Wells, 69 Pa. Superior Ct. 227.

We see no error in the charge of the court in regard to motive. The statement that "where a motive is shown it is more likely that the defendant committed the crime than a man who had no motive" is certainly a statement to which the common experience of mankind will lead us to give assent.

All the assignments of error are overruled and the judgment is affirmed, and the record is remitted to the

court below with direction that the judgment be carried into effect and to that end it is ordered that the defendant, Edward Keegan, forthwith appear in that court and that he be by that court commanded to comply with such part of the sentence as had not been performed at the time the appeal was taken.